**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGEL MANUEL PINET, : | |
| : | Civil Action No. 10-2347 (NLH) |
| Plaintiff, : | |
| : | |
| v. : | **O P I N I O N** |
| : | |
| DONNA ZICKEFOOSE, et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES**:

Angel Manuel Pinet, Pro Se
8773067
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640


**HILLMAN**, District Judge

   Plaintiff, Angel Manuel Pinet, currently confined at the Federal Correctional Institution, Fort Dix, New Jersey, has submitted this civil complaint, and supplemental complaint, which allege violations of his constitutional rights, and seeks damages pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), and the Americans with Disabilities Act.  Plaintiff has not paid the filing fee, and seeks permission to proceed in forma pauperis.  Based on

Plaintiff's affidavit of indigence, this Court will grant his request.

At this time, the Court must review the complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2). For the following reasons, the complaint will be dismissed, without prejudice.

## **BACKGROUND**

Plaintiff seeks to sue the warden of the Federal Correctional Institution where he is confined, along with various doctors and staff at that Institution.  In his original complaint (docket entry 1), Plaintiff asserts that in 2007, he started to notice a deterioration of his vision, and in 2008, "two small winglike structures" appeared on both of his eyes.  He was examined by the named defendant medical staff at the Institution, and sought referral from Warden Zickefoose to see an ophthalmologist.  Plaintiff states that he wanted to see an ophthalmologist because he was being told he did not have a cataract, and after researching his condition on his own, he believed that he did.

Plaintiff was seen by an optometrist on March 20, 2009, who prescribed him eyeglasses, but who "failed to diagnose and/or

provide any treatment, nor refer me to see an Ophthalmologist . . . ." Plaintiff also asserts that the optometrist prescribed him the wrong glasses, because they were too big for his face and too strong for him. He states that in February the eyeglasses were confiscated.

Plaintiff asserts that because of his visual impairment, he suffers from pain, blurring, dizziness, and cannot perform major life activities.

Plaintiff has utilized the Federal Bureau of Prisons ("BOP") Administrative Remedy Procedure.[1]  He attaches to his complaint his administrative remedy forms. Plaintiff's informal resolution response states:

---

[1] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. See id. Appeal to the General Counsel is the final administrative appeal. See id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

> This is in response to your BP-8 dated August 6, 2009, in which you claim you are being denied prescription glasses, as well as being denied access to an Opthamologist [sic].  Glasses have been ordered, eye doctor has to refer to the ophthalmologist and he said the inmate does not need to see the ophthalmologist.

Plaintiff also attaches to his complaint his response from the Warden during his administrative remedy.  The Acting Warden stated, in relevant part:

> A review of your medical record indicates you were evaluated by an Optometrist on March 20, 2009.  The examination revealed a Pterygium to your right eye with no visual obstruction noted.  You were found to be nearsighted (Myopia), so prescription eyeglasses were ordered for you through UNICOR.  Once medical services receives the glasses, you will be placed on call-out.  Your medical records show no documentation supporting your claim that you have a cataract.  Accordingly, your request is denied.

Likewise, Plaintiff's appeal to the Regional Director was similarly dismissed, with the Regional Director stating, in relevant part:

> A review of your appeal reveals that the Warden correctly described the appropriate medical care that you are receiving.  On June 3, 2009, you were evaluated by a contract Optometrist for a routine examination and vision screen.  As such, you were found to be nearsighted and prescription eyeglasses were ordered for you, and will arrive in the near future.  Your medical record shows no documentation supporting your claim that you have a cataract.  Furthermore, the Americans with Disabilities Act does not apply to your current medical condition.  Medical staff advise that you are receiving appropriate treatment.  Accordingly, your appeal is partially granted.

Finally, in his original complaint, Plaintiff provides the response from the National Inmate Appeals administrator, who states, in relevant part:

> Relevant portions of your medical record have been reviewed which reveal there is no indication that you have a cataract.  Further, you were evaluated by a consultant optometrist and prescription eye wear was ordered.  On November 13, 2009, you received eye glasses.  According to your medical record, you have complained about the eye glasses and are not wearing them.  Additionally, you have been instructed to bring the eye glasses to sick call with you so they may be examined, however, you have failed to do so.  It is important for you to cooperate with medical staff regarding your medical treatment plan.  Should you wish to cooperate, you are encouraged to seek medical assistance through normal sick call procedures so your eyes and eye wear can be addressed.  The record reflects you are receiving medical care and treatment in accordance with Bureau policy.

In his original complaint, Plaintiff asks for monetary and other relief.

Plaintiff's supplemental complaint was filed on July 28, 2010 (docket entry 4).  In his supplemental complaint, Plaintiff states that in 2007, he was diagnosed with hemorrhoids for which he received medication.  About eight months prior to the filing of the supplemental complaint, his medication was stopped and he "was forced to use over-the-counter medications," which he does not prefer because they do not help him.  On May 21, 2010, he asked to see a doctor.  On May 26, he was able to see the doctor who prescribed him medication, but that the pharmacist and

clinical director did not give him the medication for two days, and that they refused to sign him up for sick call.

## DISCUSSION

### A.  Standard of Review

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, because plaintiff is a prisoner and is proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all

6

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

Recently, the Supreme Court refined this standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief.  See Fed. R. Civ. P. 8(a)(2).[2]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See id. at 1948.  The Supreme Court's ruling in Iqbal

---

[2] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required."  Fed. R. Civ. P. 8(d).

emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  See id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

**B.   *Bivens* Actions**

Plaintiff brings this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging violations of his civil rights guaranteed under the United States Constitution.  In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[3]  The Supreme Court has also implied Bivens damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14

---

[3]  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

8

(1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).

Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005). Both are designed to provide redress for constitutional violations. Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits. See Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987) (citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

**C.   Medical Care Claims**

In this case, Plaintiff alleges that he has not received proper medical care, in violation of his constitutional rights.

The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his

9

right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to

his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd , 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.

In this case, Plaintiff has not alleged facts indicating deliberate indifference on the part of the defendants.  It is clear from Plaintiff's own statements and the administrative remedy forms which he attaches to his complaints that Plaintiff was not denied medical attention.  For his eye complaints, Plaintiff was seen by an optometrist, was diagnosed, and treated.  His request to see the ophthalmologist was considered and rejected, as there was no evidence of a cataract.  With regard to Plaintiff's supplemental complaint, Plaintiff was examined and prescribed medication for his hemorrhoid condition.  While it is conceivable that Plaintiff may have been misdiagnosed, not seen the specialists he prefers, or treatment may not have been to his liking, at most, Plaintiff has alleged facts indicating medical malpractice.  As pled, however, Plaintiff's complaints do not rise to the level of an Eighth Amendment violation.[4]

---

[4] Plaintiff asserts jurisdiction under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, which provides that "no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services,

Therefore, Plaintiff's claims will be dismissed, pursuant to 28 U.S.C. § 1915(e), for failure to state a claim upon which relief may be granted.  However, the dismissal will be without prejudice to Plaintiff filing a motion to reopen and submitting an amended complaint, in accordance with the attached order, that addresses the deficiencies as outlined above.

---

programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "To establish a prima facie case for these statutes [the ADA and Rehabilitation Act] the following elements must be established: '(1) [plaintiff] is a qualified individual with a disability; (2)[he] was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'"  <u>Scherer v. Pennsylvania Dept. of Corrections</u>, 2007 WL 4111412 at *8 (W.D. Pa. Nov. 16, 2007) (quoting <u>Calloway v. Boro of Glassboro Dept. of Police</u>, 89 F. Supp.2d 543, 551 (D.N.J. 2000)).

   Here, Plaintiff's claim under the American with Disabilities Act (ADA) fails.  Plaintiff has not alleged that nearsightedness is a qualifying disability.  Also, Plaintiff has not pled that he was deprived of the benefits of participation in prison programs, services, or activities because of a physical disability.  <u>See Pennsylvania Dept. of Corrections v. Yeskey</u>, 524 U.S. 206, 211, (1998).

## **CONCLUSION**

For the reasons set forth above, Plaintiff's complaint and supplemental complaint will be dismissed, without prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2).

An appropriate order accompanies this opinion.

                                         /S/NOEL L. HILLMAN
                                         NOEL L. HILLMAN
                                         United States District Judge

At Camden, New Jersey

Dated: September 30, 2010